IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK R. BERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-1368 |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 6th day of August, 2024, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on September 15, 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on August 8, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) consistent with this Order.

**I.     Background**

Plaintiff was initially awarded Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, with an onset date of May 31, 2011. (R. 33, 80). On September 16, 2013, Plaintiff reported to the Social Security Administration ("SSA") that he

1

had begun working as a consultant with Accessible Dreams earning $38.00 per hour. (R. 187-88). The SSA completed a work continuing disability review and, on November 27, 2013, sent Plaintiff a notice that his benefits were continuing, explaining that he had worked for a month but had been unable to continue. (R. 71). The notice also reminded Plaintiff that he should promptly report events affecting his benefits, providing a list of examples that included returning to work, performing new duties, medical improvement, application for workers' compensation or other public disability benefits, and changes in work expenses. (R. 71-72). The notice explained that he could engage in a trial work period, wherein, for up to nine months, he could continue to receive DIB regardless of how much money he earned. It further referenced an "extended period of eligibility" of 36 months beyond the trial work period wherein he could continue to receive benefits for months that he was not substantially employed, indicating that earning over $1,040.00 per month would be considered to be substantial. (R. 73-74).

Plaintiff next informed the SSA on July 17, 2014, that he was working for Tri-County Patriots for Independence and earning $45,000.00 per year. (R. 189-90). He further completed and submitted a work activity report on September 3, 2014. (R. 192-96). Subsequently, on September 12, 2014, the SSA notified Plaintiff that "because of your work, you may not be eligible for disability payments for November 2014 and continuing." (R. 75). The notice stated that Plaintiff's trial work period of nine months ended in June of 2014, and explained that:

> During the first 3 years of your extended period of eligibility (EPE), we can pay you disability payments for:
>
> - Any month your work is <u>not</u> substantial gainful activity, and
> - The first month that your work is substantial gainful activity, and
> - For the next 2 months no matter how much you earn.

2

(R. 77-78).  It stated that the extended eligibility period began in July 2014 and had not ended.  (R. 78).  Accordingly, the notice indicated that Plaintiff would not be paid benefits on or after November 2014 because his work was substantial gainful activity.  (R. 78).  It further indicated that he should contact the SSA within 10 days if he had additional information and provided a phone number at which to call the agency.  (R. 75).  It stated:

> If we do not hear from you within 10 days, we will make our decision about your disability payments based on information we have now.  We may decide to suspend your benefits.  We will send you another letter when we make our decision.

(R. 76).

On October 1, 2014, the SSA sent a revised notice of decision about Plaintiff's disability benefits indicating that his disability had ended and that, as of November 2014, he was not entitled to any further payments.  (R. 84).  The notice further indicated that Plaintiff would be notified later about any over- or under-payment and any changes in Medicare coverage.  (R. 85).  It further informed Plaintiff that, if he disagreed with the decision, he could ask for an administrative law judge ("ALJ") hearing in writing within 60 days.  (*Id.*).  There is nothing in the record to suggest that the Plaintiff requested any such hearing at that time.

Despite what was stated in the October 1 notice, Plaintiff appears to have continued to receive DIB payments through April 2016.  The next documented communication between the parties was on June 2, 2016,[1] when Plaintiff completed another work activity form verifying that he was earning $45,000.00 per year.  (R. 197-203).  In response, the SSA sent three letters in quick succession.  Specifically, it sent a letter dated June 13, 2016, indicating that, because Plaintiff had

---

[1] As the Court will further discuss below, it is alleged that at least one telephone conversation occurred prior to this after Plaintiff received the October 1 notice.

performed substantial gainful work during his period of reinstated benefits, his benefits could not be started again. Like the October 1 letter, it also informed Plaintiff that he would be notified later about any over- or under-payment and any changes in Medicare coverage. (R. 181-83). On June 21, 2016, the SSA informed Plaintiff that, because his checks were not stopped as of August 2014, it had overpayed him more than $31,000.00 in benefits and directed him to refund this overpayment within 30 days. (R. 87). However, pursuant to a June 27, 2016 letter, the SSA informed Plaintiff that this amount would be reduced to $29,550.10 after the SSA was able to stop Plaintiff's June 22, 2016 payment. (R. 184-85).

On August 1, 2016, Plaintiff requested that the claim for overpayment be waived by the SSA, as he had not created the alleged overpayment and could not afford to pay the money back. (R. 88-97). He further sought reconsideration of the decision on the same grounds. (R. 98). The SSA found that reconsideration was not warranted but did consider his request for a waiver. (R. 99). On June 5, 2017, the SSA informed Plaintiff that it could not approve his request for a waiver, but that he had a right to a personal conference with an individual not involved in the previous decision. A personal conference was scheduled for June 16, 2017, and later rescheduled for August 9, 2017. (R. 100-01, 109). During the interim, on July 1, 2017, the SSA sent notice that Plaintiff's extended period of eligibility ended in June 2017 and that he was not eligible for his payments to be restarted. (R. 106-07).

After the August personal conference, the SSA again denied Plaintiff's request for a waiver and notified him of his right for review by an ALJ. (R. 110-11). Plaintiff requested such a hearing and waived his right to representation. (R. 159). Accordingly, a hearing was held on September 5, 2019. (R. 53-70). After the hearing, Plaintiff sent a letter dated September 14, 2019 to the ALJ raising evidentiary concerns about the hearing and referencing a telephone call he had with an

SSA representation after he received the October 1, 2014 notice that his benefits were being discontinued. (R. 162-66). On February 7, 2020, a second hearing was held before the same ALJ. (R. 25-52).[2]

Subsequently, on February 21 2020, the ALJ issued a decision denying Plaintiff's request for a waiver of overpayment recovery, finding that Plaintiff was liable for the repayment of $29,550.10, representing the balance of the overpayment he had received. (R. 20-23). However, finding that there was evidence that should have been included in the file that supported Plaintiff's timeline of the relevant events, the Appeals Council granted Plaintiff's request to review the ALJ's decision. (R. 212-16). Nonetheless, on November 9, 2021, the Appeals Council issued an unfavorable decision largely affirming the ALJ and finding that Plaintiff was at fault for the overpayment because he continued to accept benefits he should have known were incorrect. (R. 4-10). Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

**II.   Analysis**

As with social security disability cases in general, judicial review of a determination that a claimant is liable for an overpayment of benefits is based upon the pleadings and the transcript of the record, and the scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Bierley v. Barnhart*, 188 Fed. Appx. 117, 119 (3d Cir. 2006). "Substantial evidence" is defined as "'more than a mere scintilla. It means such

---

[2] The precise need for the second hearing is not clear from the record. At this hearing, the ALJ, in fact, stated he had no recollection of the 2019 hearing, nor did he have any notes or a record of exhibits from that first hearing. (R. 29-31). The first hearing is also not mentioned in the ALJ's February 21, 2020 decision denying Plaintiff's request for a waiver.

relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

Here, the issue is whether substantial evidence supports the Commissioner's decision that the overpayment of $29,550.10 was not waived, and that Plaintiff was liable for that amount, because he was not without fault for the overpayment. The Act obligates the Commissioner to properly adjust or recover any overpayment made to an individual receiving DIB benefits. *See* 42 U.S.C. § 404(a)(1). However, the Act also permits the Commissioner to waive collection of the overpayment if: (1) the recipient of the overpayment was without fault; and (2) recovery of the overpayment would either: (a) defeat the purpose of Title II of the Act or (b) go against equity and good conscience. *See* 42 U.S.C. § 404(b)(1); 20 C.F.R. § 404.506(a); *Mehalshick v. Comm'r of Soc. Sec.*, 609 Fed. Appx. 710, 712 (3d Cir. 2015). The recipient bears the burden of proving that both elements have been satisfied. *See Stevens v. Colvin*, 232 F. Supp. 3d 605, 612 (D. Del. 2017). To meet this burden, the recipient must show that the ALJ's findings are not supported by substantial evidence. *See id*.

As noted, here, the Commissioner found that Plaintiff was not without fault. Pursuant to SSA regulations:

> Fault as used in without fault (see § 404.506 and 42 CFR 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault.

20 C.F.R. § 404.507. The recipient of an overpayment is considered to be at fault where:

> the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.* The United States Supreme Court has held that "'fault' depends on an evaluation of 'all pertinent circumstances' including the recipient's 'intelligence . . . and physical and mental condition' as well as his good faith." *Califano v. Yamasaki*, 442 U.S. 682, 696–97 (1979) (citing 20 C.F.R. § 404.507). Nonetheless, "[a] showing of bad faith is not required; 'rather, an honest mistake may be sufficient to constitute fault.'" *Karlson v. Colvin*, 17 F. Supp. 3d 432, 438 (D.N.J. 2014) (citing *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir.1983)). Under this standard, the Court is not convinced that substantial evidence supports the Commissioner's finding that Plaintiff was not without fault for the overpayments at issue.

As is often the case in matters of Social Security overpayment, determining the precise sequence of events is crucial. The ALJ's February 21, 2020 decision, by failing to consider a good deal of evidence of Plaintiff's interactions with SSA, fell far short of properly doing so. Indeed, in his analysis, the ALJ referenced only the November 27, 2013 notice from SSA that did no more than inform Plaintiff that performance of substantial work could result in overpayment. He did not discuss any of the documents regarding the discontinuation of benefits

or of Plaintiff's reaction to those documents. Most importantly, no reference was made to the October 1, 2014 notice actually informing Plaintiff that his benefits would end. (R. 22).

To its credit, the Appeals Council recognized the ALJ's failure to consider all of the relevant evidence in determining the sequence of events, but its decision also failed accurately to address the entirety of the events relevant to the issue of whether Plaintiff was at fault. The Appeals Council accurately noted that the ALJ erred in finding that there was no evidence that Plaintiff had reported his work activity, finding that Plaintiff had reported such activity in 2013 and 2014 and that each time, SSA performed a work continuing disability review. (R. 7-8). It also acknowledged the October 1, 2014 notice of the discontinuation of Plaintiff's benefits. (R. 8). However, despite this improved timeline, the Appeals Council failed to accurately consider what happened after the SSA sent the October 1 notice.

Most significantly, the Appeals Council did not address in any way Plaintiff's contention that he contacted the SSA via telephone after receiving the October 1 notice. In his August 1, 2016 letter to SSA, Plaintiff claimed that the October 1, 2014 notice informed him that his "period of eligibility will be extended for 36 months," which he took to mean that his "trial work period extension would not expire until July 2017." (R. 88-89). In his September 14, 2019 letter to the ALJ, Plaintiff further stated, "When I called the SSA about the letter, and in concern of the by wages they indicated that I could continue to earn during this period at no penalty to my benefits, all I needed to do was submit my earning report when requested." He indicated that the letter and follow-up telephone call led him to believe that his benefit status remained the same. (R. 162-63). He testified more generally to telephone calls with SSA at both hearings regarding "work tickets" and an extended period of eligibility. (R. 38-39, 41-42, 46, 58-65).

8

Given the sequence of events, the details of any such communication would be highly probative to the Commissioner's finding that Plaintiff continued to accept benefits he knew or should have known were improper. As discussed, although the October 1 notice informed Plaintiff that his benefits would end as of November, the SSA continued paying these benefits past this date. No specific instructions were provided as to what Plaintiff was to do in such a situation, *i.e.*, he was not required to take any specific action to report continued payments. Plaintiff appears to allege that he *did* contact the SSA by telephone regarding this issue after receiving the October 1 notice and that he was assured that his benefits remained unchanged until at least 2017. While by no means was the Commissioner required to simply accept Plaintiff's statements as to this alleged conversation as incontrovertibly true, it certainly had to consider this evidence in determining whether Plaintiff was, in fact, at fault for doing nothing further in regard to the continued DIB payments. Indeed, if it were the case that Plaintiff contacted SSA about the continued payments and was told he needed to take no further action, a finding of fault becomes much more difficult to support.

The ALJ did, in his decision, discuss Plaintiff's alleged telephone conversation but did not place it in any specific time context, much less the context of having been held after Plaintiff's receipt of the discontinuation of benefits notice. Moreover, he failed to indicate what steps, if any, he had taken to further develop the record in regard to this communication.[3] Regardless, given the general lack of the development of the record as to the sequence of events, the Appeals Council granted review. The Appeals Council, though, did not address this alleged

---

[3] The ALJ also relied heavily on the fact that there was no documentary evidence of any such calls without acknowledging that there was no particular requirement for such documentation. (R. 22).

9

conversation at all.[4]  Therefore, there was no satisfactory analysis as to the veracity of Plaintiff's statements nor was the record developed to make a proper finding on this issue.  What Plaintiff did in response to payments made after the discontinuation notice is extremely relevant, particularly given the lack of any formal procedure he would have been expected to follow in the seemingly unlikely event that his payments continued after he had been informed they would end.

The Court is cognizant of the fact that the SSA's fault in continuing payments or in possibly misinforming Plaintiff as to the nature of those payments does not necessarily negate any fault on Plaintiff's behalf.  The Court is not, therefore, expressly remanding the case for a determination as to what mistakes the SSA made during this process.  However, it is necessary to determine the steps taken by Plaintiff in response to the continued payment of benefits, which would include communications he may have had with the SSA during the relevant time frame.  The Court is also aware that, even if not at fault, Plaintiff may still be ineligible for a waiver.  Such a determination, if necessary, must be first made, though, by the Commissioner.

---

[4] The Appeals Council also discounts that the overpayment only came to light after Plaintiff contacted SSA about a change in his employment on June 2, 2016.  Rather, the Appeals Council claims that the agency took action after a May 2016 work continuing disability review not reflected in the record.  (R. 8).  This additional misstatement of the sequence of events only further demonstrates the need for the case to be remanded to determine what precisely happened after Plaintiff continued receiving benefits after November 2014.

**III.     Conclusion**

The record does not permit the Court to find that substantial evidence supports the Commissioner's decision that Plaintiff was not entitled to a waiver of his overpayment of benefits because he was not without fault. Accordingly, the case is remanded for further consideration consistent with this order.

s/Alan N. Bloch<br>
United States District Judge

Dated:          August 6, 2024

ecf:            Counsel of record

cc:             Mark R. Berton
                6340 Waldron Street
                Pittsburgh, PA 15217